

**FILED**

IN THE DISTRICT COURT OF THE UNITED STATES

AUG 2 0 2012

FOR THE NORTHERN DISTRICT OF ILLINOIS

THOMAS G BRUTON

CHICAGO DIVISION

CLERK, U S DISTRICT COURT

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| Plaintiff/Respondent | ) | |
| V. | ) | Crim. No. 1:08-cr-00372-1 |
| | ) | |
| Edward R Velazquez | ) | |
| Defendant/Petitioner | ) | Verified, must be taken as true |

### NOTICE OF SPECIAL APPEARANCE AND REVOCATION OF PLEA AGREEMENT AND WRITTEN ALLOCUTION IN LIEU OF SENTENCING

Petitioner invokes all rights secured by Magna Charta, The Bill of Rights of 1689, The Declaration of Resolves of the First Continental Congress of October 14, 1774, The Declaration of Causes and Necessity of Taking up Arms of 1775, The Declaration of Independence, The Articles of Confederation, The Treaty of Peace with Great Britain of 1783, The Northwest Ordinance of 1789, The Constitution of the United States, and more particularly the Tenth Article of the Bill of Rights including the 1st, 5th, 6th, 8th and 14th Amendments of the Constitution, and invokes those rights herein by judicial notice.

Petitioner uses this written allocution in lieu of sentencing to declare that Petitioner was induced to take a plea agreement for the benefit of Petitioner's attorney and for the benefit of the prosecutor, attempting to waive Petitioner's rights according to the Constitution of the United States, Amendments 1, 5, 6, 8, 14.

Petitioner requests the court to take judicial notice of *Bordenkircher v. Hayes*, 434 US 357 (1978), in which the Supreme Court stated that even the appearance of retaliation is a violation of Due Process. In other words, if you were in prison, and filed a grievance against the government, and you had two blankets on your bed, and the government retaliated by taking one blanket from your bed, that is a *Bordenkircher* violation.

Petitioner understands that the attorneys in this case are no more than paid slaves. The US attorney is paid to win cases at all costs, regardless of justice. The defense attorney

1

makes his living by keeping the court and the US attorney happy. The Petitioner is nothing more than a pawn in a game in which the government of the United States has over 50 percent of the worlds prisoners, yet has only 4 percent of the worlds population.

Petitioner attaches as Appendix A a notarized affidavit of fact outlining the grievous errors committed by Petitioner's attorney and the US attorney in this case in order to induce a plea agreement.

Petitioner also attaches as Appendix B a notarized affidavit of fact from Aphrodite Partalis attesting to the grievous errors committed by Petitioner's attorney.

Petitioner also attaches as Appendix C notarized affidavit of fact from Zully Velazquez attesting to the grievous errors committed by Petitioner's attorney.

Petitioner also attaches as Appendix D notarized affidavit of fact from Bianca Ganvik attesting to the grievous errors committed by Petitioner's attorney.

Petitioner also attaches as Appendix E 3 pages of emails exchanged between Petitioner and Petitioner's attorney providing evidence as to the Petitioner's attorney's grievous errors; The lack of communication of the Petitioner's attorney ; The lack of accountability of the Petitioner's attorney as well as his lack of knowledge of the case.

Petitioner also attaches as Appendix F a notarized, certified, true copy of the letter Petitioner had prepared for Judge James Zagel on February 23, 2011 asking his Honor to recuse the Petitioner's attorney and clearly showing how the ineffective counsel of Petitioner's attorney by acts of dishonesty, coercively blatant lies, lack of communication, lack of knowledge of the case and contradicting intention established irreconcilable distrust on the Petitioner's part towards the Petitioner's attorney.

Petitioner also attaches as Appendix G a notarized, certified, true copy of the prose motion to substitute counsel Petitioner had prepared to file which was intercepted when he was lied to, tricked, coerced and threatened by both Prosecutor Hayes and Petitioner's own attorney, James Marcus on February 23, 2011

Petitioner also attaches as Appendix H a notarized certified true copy of the letter that was handwritten by James Marcus addressed to Aphrodite Partalis and personally handed to Aphrodite Partalis by James Marcus that Petitioner was made to sign.

Petitioner also attaches as Appendix I a certified true notarized copy of the original notarized receipt from the attorney firm of Dziedziak and Marcus, P.C. to Aphrodite Partalis, signed by James Marcus acknowledging that the amount of $50,000.00 was received for the legal defense of Eduardo Velazquez.

Petitioner also attaches as Appendix J certified , notarized copies totalling  3 pages of the checks totalling the amount of  $50,000.00 that were presented to the Dziedziak and Marcus, P.C. and deposited by Dziedziak and Marcus.

Petitioner also judicially notices the NDAA act of 2012, which was signed by President Obama on December 31, 2011 and which allows the government to declare anyone convicted of a crime a terrorist and retain them indefinitely without hearing.

Petitioner also revokes any plea agreement as such plea was obtained by threat and harassment, after Petitioner paid counsel $50,000, and any pleas, which are contractual in nature, are void as a result of Due Process, threats and coercion, in order to cunningly induce petitioner to waive his Constitutional rights.

Petitioner requests the court to demand immediate repayment (within 48 hours) of any fees paid to Petitioner's attorney.


Respectfully Submitted, Edward R. Velazquez

_____          August 9, 2012

Signed                                                    DATED

3

IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE NORTHERN DISTRICT OF ILLINOIS

CHICAGO DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| V. | ) | Crim. No. 1:08-cr-00372-1 |
| | ) | |
| Edward R Velazquez | ) | |

### NOTICE OF JURISDICTIONAL DEFECTS
### AND WRITTEN ALLOCUTION IN LIEU OF SENTENCING WHICH REQUIRES THE COURT TO CANCEL THE PLEA AGREEMENT AND ORDER DISMISSAL OF THE CASE

Petitioner presents two issues related to any potential sentencing of Petitioner. Petitioner has a legal right to allocate at sentencing, and to present issues that either diminish Petitioner's sentence or eliminate the sentence.

Petitioner presents an offer of proof, pursuant to Haines v. Kerner. 404 US 519 (1972). The court can not refuse an offer of proof.

#### First Issue: The Plea Was Obtained by Coercion and Threats

As established by the affidavit attached, Petitioner's attorney showed at Petitioner's place of confinement, along with the United States Attorney and an agent of the government, and used threats against Petitioner to induce Petitioner to enter a plea agreement.

The guilty parties threated Petitioner in order to induce Petitioner to enter into a plea agreement, threatening Petitioner with a significant amount of additional time if Petitioner failed to sign the plea agreement. Petitioner was at that time under extreme duress from 3 parties, including his own attorney, the US attorney, and the agent for the government. In fear of his life, Petitioner was forced to enter into a plea agreement for crimes Petitioner did not believe Petitioner committed.

The parties, Petitioner's own attorney, the agent for the government, and the US Attorney, acted in collusion in violation of Petitioner's right to trial in order to minimize the amount of their investment of time in the case and to maximize their pay in relation to the amount of time they spent on the case. The 3 parties also promised Petitioner a significant reduction of sentence for cooperation, which was a scam and they never intended to honor.

4

Although terrified about their threats, Petitioner discovered subsequently that they had no intention of honoring their word and the triple teaming of Petitioner was nothing more than a scam to induce Petitioner to enter into a bogus contract to be presented to the court.

Petitioner had also paid his attorney $50,000, with the understanding that Petitioner would go to trial, and counsel then participated in convincing Petitioner to do a plea agreement, in order to minimize the amount of time counsel spent on the case, without complete and thorough investigation, without hiring private investigator(s), without hiring expert witness(es), and in order to maximize the amount of money he received per hour. Counsel also failed to properly investigate the case and failed to present a "Dead Bang Winner" to the court, the invalid indictment. Therefore the court should order counsel to refund all moneys received from Petitioner within 48 hours.

Plea agreements are contractual in nature, and the courts generally interpret such agreements according to ordinary contract law principles.[1] However, because plea agreements implicate the **deprivation of human freedoms**, the rules governing their interpretation, although having their roots in the principles of contract law, also acknowledge that the concern for due process outweighs the concern for freedom of contract.[2] Thus, an analysis of a plea agreement is conducted with greater scrutiny than in a commercial contract.[3]

A plea agreement may be rendered invalid by an ambiguity in an essential term or by mutual mistake about the meaning of such a term.[4] A plea agreement includes an implied obligation of **good faith and fair dealing**.[5] A plea of guilty is only a waiver of **non-jurisdictional defects**. A defendant may attack the voluntary and intelligent character of the guilty plea or the ineffectiveness of counsel.[6] A guilty plea admits those facts that are well pleaded in the charge, and does not preclude the defendant from claiming that those facts **do not constitute a crime** or that the indictment does not **properly charge an offense**[7] which is a jurisdictional defect that is not waived by the entry of a guilty plea.[8]

---

[1] *U.S. v. Pollack*, 91 F.3d 331 (2d Cir. 1996); *U.S. v. Gilcchrist*, 130 F.3d 1131 (3d Cir. 1997), cert. denied, 118 S.Ct. 1307, 140 L.Ed. 2d 472 (U.S. 1998); *U.S. v. McQueen*, 108 F.3d 64 (4th Cir. 1997); *Hentz v. Hargett*, 71 F.3d 1169 (5th Cir. 1996), cert. denied, 517 U.S. 1225, 116 S.Ct. 1858, 134 L.Ed. 2d 957 (1996); *U.S. v. Ramunno*, 133 F.3d 476 (7th Cir. 1998); *U.S. v. Van Thournout*, 100 F.3d 590 (8th Cir. 1996); *U.S. v. Schuman*, 127 F.3d 815 (9th Cir. 1997); *U.S. v. Brunner*, 134 F. 3d 1000 (10th Cir. 1998).
[2] *U.S. v. Mankiewicz*, 122 F.3d 399 (7th Cir. 1997)
[3] *U.S. v. McQueen*, 108 F.3d 64 (4th Cir. 1997).
[4] *U.S. v. Barnes*, 83 F.3d 934 (7th Cir. 1996), cert. denied, 117 S.Ct. 156, 136 L.Ed. 2d 101 (U.S. 1996) and cert denied, 117 S.Ct. 156, 136 L.Ed. 2d 101 (U.S. 1996).
[5] *U.S. v. Jones*, 58 F.3d 688 (D.C. Cir. 1995)
[6] *U.S. v. Torres*, 129 F.3d 710 (2d Cir. 1997); *Romero v. Tansy*, 46 F.3d 1024 (10th Cir. 1995)
[7] *U.S. v. Gallagher*, 94 F.Supp. 640 (W.D. Pa. 1950)
[8] *U.S. v. Fitzhugh*, 78 F.3d 1326 (8th Cir. 1996), cert. denied, 117 S.Ct. 256, 136 L.Ed. 2d 182 (U.S. 1996)

An illegal contract is a promise that is **prohibited** because the performance, formation, or object of the contract is against the law. Black's Law Dictionary, Second Pocket Addition, 2001, pg. 140. A void contract is one that is of no legal effect, so that there is really no contract in existence at all. *Id.*, pg. 142.

All issues presented in the Petition are jurisdictional in nature, or allow Petitioner to raise them as Constitutional violations due to the trial court's lack of jurisdiction, ab initio. Since the trial court never had jurisdiction over Petitioner, no contract exists, no waiver exists, Petitioner is imprisoned for committing no crime, and thus Petitioner's indictment and conviction are null and void, ab initio.

A plea agreement obtained by threat is illegal on its face. The court should issue an order to have counsel refund all monies to Petitioner within 48 hours and to declare counsel incompetent as a matter of law.

## Second Issue: The Grand Jury Proceedings were a fraud on the United States

The prosecutor controls all grand jury records. Therefore, a presumption exists that all grand jury records are tainted, a product of the illegal tampering of the prosecutor's office with the grand jury proceedings. In fact, a former US prosecutor has admitted that in many cases the US prosecutor has a signature stamp of the grand jury foreman in his/her office and never presents anything to the grand jury. This is a fraud on the court and is designed to allow fraudulent indictments to be issued.

Yet the Supreme Court held in US v. Williams, 1992, that the grand jury was the equivalent of a 4th branch of government, not to be tampered with by any other branch.

No evidence of a quorum exists related to the Grand Jury proceedings and none is evident on the docket sheet. In fact, in a separate case under inquiry, evidence now exists that the vote of the grand jury, if one really exists, was done by voice vote without any recording of who voted. A presumption now exists that if a grand jury actually existed, then no record exists of the members of the grand jury that actually voted. Therefore, a presumption now exists that the grand jury had no quorum when it had an alleged vote.

FRCrimP 6 requires that an indictment be presented in open court. However, no indictment was presented in open court as identified by legal dictionaries, and therefore the indictment is invalid and Due Process was violated.

A grand jury indictment requires an original signature from the grand jury foreman. However, no grand jury original wet ink signature exists in this case. Therefore, the grand jury indictment was robo-signed.

The indictment is invalid as a matter of law.

## CONCLUSION

Any plea agreement entered into by Petitioner was done under threat and coercion, rendering it invalid as an illegal contract. Petitioner hereby revokes any such agreement. The court should order counsel to refund the $50,000 paid to him as illegally obtained and since counsel failed to investigate the case. The court further lacks jurisdiction due to the 2 quorum violations, on May 12, 1947, and again on June 22 and 23, 1948 and the court is required according to its oath of office to uphold the Constitution, to declare Petitioner actually innocent as a matter of law. The government further violated Petitioner's Sixth Amendment rights by failing to honour the grand jury requirements.

In the alternative, this Honorable Court should issue a Show Cause Order to the Government as to why Petitioner should not be immediately released from custody.

## PRAYER FOR RELIEF

Petitioner moves the court as follows:

> Order the defense attorney to refunds all monies received by them within 48 hours;
>
> Declare the actions of defense attorney in violation of the Sixth Amendment;
>
> Declare that the plea agreement is unconstitutional since it was coerced and made under threat and duress;
>
> Declare that no valid jurisdiction exists in this court;
>
> Declare that the indictment was issued in violation of the Constitution of the United States;
>
> For such other and further relief as the court deems just and equitable.

Respectfully submitted,

Edward R. Velazquez

Signed _____     August 9, 2012
                                                                              DATED

7

## VERIFICATION

I Certify that the facts stated herein are true and correct under the penalty of perjury pursuant to 28 USC section 1746, that I am over the age of the majority, that I have personal knowledge of the facts stated herein, and that I am not insane.

_____

Edward R. Velazquez

## CERTIFICATE OF SERVICE

I certify that on this the 9th _____ day of August 2012, a true and correct copy of the foregoing was served on opposing counsel by first class mail, postage prepaid,

_____

Edward R. Velazquez

8

County of Cook

State of Illinois

AFFIDAVIT OF FACT

My name is Eduardo R Velazquez and I am over 18 years of age

I do not nor have I ever had any mental illness

Under the penalties of perjury I state the following as true statements of fact:

On January 10, 2012, I joined a class action lawsuit challenging the validity of Title 18 of the Criminal Code.

I am a pretrial defendant being held at the MCC in Chicago where I am allowed legal visits on the 8th floor of this facility.

Sometime during the week of Christmas of 2011, I emailed my paid attorney James Marcus a request for my detailed accounting, all discovery and copy of my signed proffer. Sometime in the later part of January, I emailed my paid attorney James Marcus information on a Supreme Court case Carol Ann Bond Vs. United States. I also emailed him information about the merits of the Class Action lawsuit.

Mr Marcus came for a legal visit following the email that I sent him regarding looking into the jurisdiction and no quorum issue of the Title 18 Class Action. During this visit, Mr. Marcus asked, "why are you bothering me with this Title 18, its just going to get rejected for being frivolous". At that point I told Mr. Marcus that I wanted him to look into the jurisdiction that the court has over me. I also told Mr. Marcus that I wanted him to give me my detailed accounting as well as provide me copies of the discovery of my case. He responded that "it will take me months to look and go over the 5 boxes of discovery". At that point he told me that it would entail burning up hundreds more hours of additional billing time.

In the Middle of March, Mr. Marcus visited me again at the MCC. During the visit I asked if he had looked into the jurisdiction issues on my case as well as look into the Title 18 lawsuit. I also told him that I still did not receive any discovery at all about my case. I also told him that he still did not send over the accounting since the email request during Christmas, 2011. Mr. Marcus did not answer these questions, rather he tried repeatedly to convince me to get off the Title 18 Class Action Lawsuit. He stated that Judge Zagel was a Nazi and would react harshly at sentencing if the prosecutor found out I was on the Class Action. He then explained further the urgency to have my PSR done and that I should get off the Title 18 Class Action. He again stated that for the sake of my sentencing that Judge Zagel would be angered by me trying to get out of the indictment.

Sometime after this visit, Marcus came with a woman who conducted the PSR. At one point during the visit, Marcus asked the woman to leave. He then proceeded to have me lie to the woman by telling her I was a full fledged alcoholic with many personal and marital problems so that I may fraudulently qualify for the alcoholic program to get one year off my time.

During the part of April, Mr. Marcus came again for another legal visit and stated he was "Just going to get me on my way and designated". Again he wanted to just go over the PSR. I again told him he still didn't send me my discovery or my detailed accounting. I then asked him how it was lawfully possible for me to sign a plea without

him ever reading any of my discovery. He said it was too late that the Government already has me in custody and I already signed a plea and that even if the plea is just based on lies it doesn't matter. "This is an old case, the statute of limitations is expired and the Government just wants this case resolved and they are not going to reopen their V-Tek investigation and go after the real criminals who set you up."

I then asked Marcus how it was lawfully possible for the Prosecutor Brian Hayes, FBI agent John Galutski, and Marcus to all three of them tag team me in the Marshall's floor, at the Dirksen Building attorney client cell, using threats and coercion by saying that if I didn't sign that same day in court February 23, 2011, that I would go to trial, get convicted and end up doing much more time. For the record, Hayes said that day "I've watched you respond, I think that you're very thoughtful and will make an excellent government witness. The choice is yours. You can take the plea and help out on other cases or go to trial and get convicted‖ It's up to you‖ To this Marcus fell silent and began to tell me that none of it mattered one bit. All that mattered was that I signed a plea and was guilty by self admission and that nothing else can change it.

At this point I also reminded him how unlawfull it was for FBI agents John Diwik and John Galutski, Prosecutor's Brian Nettols and Brian Hayes along with the 3rd party FBI forensics accounting expert to also tag team, threaten and coerce me into signing a plea on February 4, 2011. During that meeting with the aforementioned people, they presented possible further indictment charges for mortage fraud if I didn't give them information that they needed to prosecute other people. They used personal property such as cars and homes that I acquired to put pressure on me. They also put pressure on me to sign by bringing possible new unfound charges against my parents and my family assets. The Prosecutors, FBI agents, and Mr. Marcus used threats, coercion and psychological pressure to make me sign a plea under duress that was based on nothing but an intricately woven web of lies and deception‖

I then asked Marcus again if he had looked into the Bond case and the Title 18 Class Action he said no but that he would but he never did. I also brought up the US vs. Sallen (the E-bay case) regarding the issue of the actual dollar loss of the victims on the indictment as opposed to an intended aggregate loss without a victim. He claimed to have represented one of the defendants of Romanian descent and promised me he would look into the matter but also failed to do so. I told Marcus this was significant caselaw since my plea was for one count of mail fraud in the amount of 25k as opposed to millions of "intended loss" without a victim as stated in the indictment. He agreed wholeheartedly, but failed to look into it. I then told Marcus I believed that I was setup by Hayes, the FBI agent to force me to sign the plea. We both sat and discussed how adamantly FBI agent John Diwik, Hayes and Netols were threatening me (on Feb 4, 2011) with other new indictments if I didn't sign and cooperate. It was obviously clear by what they all said during the meeting that the level and time of cooperation would be several years. But then surprisely John Diwik, the head FBI agent leading all the investigations decides to retire early only 8 months after I signed the plea‖ Marcus said "you know what, you are right I agree with you this does sound like a setup to me too, but I'm going to get you out of here and get you designated. This way you will be at a better facility and not stuck in this old MCC building, You will be able to go outside in the yard, you'll have access to free weights, you'll have more movement and better commissary than this place, but I got to run to my next appointment, I'll be in touch soon‖"

On June 5th, Marcus filed motion for an extension in order to look through thousands of documents of discovery. This blatantly shows Marcus never read the discovery. He was not transparent with the court behind his motivation for filing this extension and instead stated I no longer talk to him.

On July 28th, 2012, In court Mr. Marcus again stated for the record that I was not talking to him anymore but purposely failed to explain the factual reasons why‖ He totally failed to legally investigate the case and the courts jurisdiction over me, he

failed to review and provide me my discovery since my arrest in June 2, 2010, and he failed to provide me with detailed accounting as I requested several times. Finally, he failed to keep his initial promise early on in the relationship "to hire a forensic accountant and private investigator to review all documents, to rebut all witness statements and properly vette, edify the veracity of the Governments claims." Additionally the billing, the discovery and copy of the proffer letter were requested in written form three seperate times since December 2011. Furthermore, Mr. Marcus has shown total flagrant disregard for my liberty as he came on every legal visit solely to convince me to withdraw from the Title 18 Class Action and to "get me on my way". Also on July 28, 2012, in court Mr. Marcus stated for the record "Do you want me to go back to the MCC and try again , Judge?". This is a clear and direct violation of my rights under the 6th Amendment

In addition, throughout our attorney client relationship prior to signing the plea, Marcus always maintained a point scheme where he stated the following in order to entice me to sign. "The Government wants to give you 168-210 months. If you sign you will be doing Judge Zagel a HUGE favor by not tying up his court time and going to trial. At sentencing, due to this and the fact you cooperated on the other cases, he will not give you the 168-210, in fact I've been in this racket for a longtime Ed and I'm telling you , Zagel will give you 100-120 months, I guarantee it because this is your first Federal case and you don't have any criminal history. But lets take the high side 120 months for worst case scenario. Now, I know I can get you 30% to 50% off for cooperating but lets just go with the middle, say 40% off. So you take 120 months minus 40%, that leaves 72 months minus 85% good time, that leaves 61 1/2 months, minus 6 months for halfway house, leaves you at 55 1/2 months And that is without the alcoholic program which takes off another year, leaving you at 43.2 months You've already done 8 months here at Kenosha. All you gota do Ed is cooperate for two to three years and you're home free ED. I'm telling you, I know what I'm talking about, I'm in business for over 20 years and I'm an ex-prosecutor. I know how the other side thinks and acts, which is great for you because it's your ass that's going to do the time, no one else I've done this dozens of times for other guy's facing much worse than you and I got them home too, Ed. Just think, your baby is 5yrs old, if you don't listen to me and plea out you're not going to see her till she's married and has her own fuckin kids for christ sake Ed! Wake up and smell the coffee

Signature: _____  Date: Aug / 6 / 2012

Pursuant to 28 U.S.C § 1746,

If executed without the United States: "I declare (or certify, verify, or state) under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed on July    2012.

Signature _____ ".

In Propria Persona

COUNTY OF COOK
STATE OF ILLINOIS

AFFIDAVIT OF FACTS

My name is Eduardo R. Velazquez and I am over the age of 18.
I do not have any mental illness.
Under the penalties of perjury I state the following.
The dialogues below are to support the coercion, threats, and duress that the
prosecutors and my attorney James Marcus subjected me to in order for me to sign a plea
agreement.

February 4, 2011 Meeting at the Dirksen Federal Building, in Brian Hayes conference
room.
First time I was threatened to sign and cooperate.
People present were: Brian Hayes (Prosecutor), Brian Netols (Prosecutor) John Diwik (FBI
agent) John McGlutski (FBI), Forensic Accountant (FBI), Jim Marcus (Attorney), Eduardo
Velazquez (Shackled).
John Diwik: I have been investigating Edward now for over a year because frankly, Edward
is a guy that appears to be the type to be investigated. (smiling) He also likes to do
business in other people's names such as his mother, Maria Velazquez and a friend of his
by the name, Tom Gandor. From my investigation, I discovered Edward purchased 5
townhomes from a guy named Norman Schmidt and a condo in downtown Chicago from a guy,
Andrew Lewis‖ All properties had been purchased with either no doc loans or stated
income loans in his mother's name. Here are the mortgage riders and various documents
(passed out docs). In addition to homes, Edward likes his cars. He likes driving nice
cars‖ We have information revealing the fact he bought several Porsches with the cash
from the cash backs he received from the real estate purchases." Winks an eye at Edward
and he says, "Porsches".
EV: Save your breath Diwik. You got nothing on me. You know it and I know it. So call
off your game show, which is nothing more than a poor excuse to waste even more, good
taxpayer money. Whoever is giving you this info is taking you for a long ride Diwik. It
doesn't behoove you to go chase around a bunch of ghost stories.
John Diwik: I'm not chasing ghosts. I spoke to Guy, Tommy, Ty Andros and a few others.
I'd be really worried if I were you. Really fucking worried pal, HEHEHE (Laughing and
smiles).
EV: Remember what I said Diwik, that's all I got to say you.
John Diwik: Oh yeah? What's that? Remember what?
EV: Save your breath. The world doesn't need another failed hero like Obama.
John Diwik: (smiling now)‖ I don't think you appreciate the seriousness of the situation
you are facing; mortgage fraud is no laughing matter. You'll never see the light of day
if you don't cooperate. Not if I can help it.
EV: What fools you all are to come in here like this and accuse me of more of your lies.
Go ahead and do what suits you best. I know the truth and its only a matter of time
before everyone will too.  You're finished in this business. You're through. you
despicable piece of shit; you and all your crew here can go to hell. You want a war?
I'll take you to war.
Brian Netols: Mr. Velazquez please calm down.
Brian Hayes: Eddie, there's no need to get irregular. Are we done here?
John Diwik: Yeah. I have nothing else.
Jim Marcus: Ok, hold on. Let me talk to Ed alone. I'm sure we can work things out here.
Ed's got incredible information and I 'm sure we can work something out.
Brian Hayes: Ok. Take 5 minutes. Let's go everyone.
Jim Marcus: Ed, what's going on? Talk to me. This is crazy. Don't piss these people off.

Diwik is the one guy you do NOT want to piss off. Don't speak disrespectfully again‖ Do yourself a favor, ok?
EV: What? Can you repeat that for me? Cuz I don't believe my ears. Are you out of your mind? These people are holding me illegally for a Goddamn crime I didn't committ and you want me to suck their kneecaps and be polite too? Are you out of your fucking mind man? I'm in jail 24/7; my wife is breaking her back to make ends meet, my baby five year old girl cries herself to sleep every night recalling the day the Marshalls bumrushed into my home! Where my wife lays her head to sleep an my baby plays with her toys‖ And these fucks say they don't give a damn about Dennis or Helmut or Petrossi and the other scumbags who stole over 5 million just because they already got someone in custody to do the prison time man! Where's the justice in that Jim! Hmmm? Can you explain that to me?
Jim Marcus: I know you're the real victim here. I know the system sucks Ed, but you gotta work with me here‖ These guys wanna put you away for a long, long time, ED. 15 years, minimum! If you go to trial you will lose ED. The Feds always get their man. It's a 98% win rate‖ Work with me‖ Let's hook up with John Diwik, become his friend and give him the dirt he wants on Guy Drehobl, Norman Schmidt, the Moots brothers and the Italians and let me get you home in 5 years, Ok? It's the only way outta this fuckin Fed nightmare Ed, I'm telling you ! I've been a fed attorney for a long time and I'm talking to you like if you're my son. You are going down for the VTek shit if you don't plea out and cooperate man, I swear to you. So lets get em back in here, we'll give them what they want and I'll get ya home, ok?


February 23, 2011 Excerpt of actual conversation between Prosecutor Hayes, FBI Mcglutski, Lawyer Marcus and myself in the Dirksen Federal Building's attorney-inmate holding cell on the US Marshall's floor‖
Second Time I was threatened to Sign and Cooperate 2/23/11 10:20 AM
Brian Hayes: I can't give you any more time. The US government is under tremendous pressure to resolve this case. This case is a very old case from 2004 and there are vicitims that want it resolved. You MUST sign today or we go to trial and you WILL lose‖
EV: I fully appreciate that and I understand as well as respect what you just said, but just as you said, it's an old case that's been going on since 2004. What's another 72 hours ? I'm not asking for a month or even a week, just 72 hours so I can explain to my immediate family and tell my fiance, (A) what it is that's going on and what i am now being told to do. You've got to see to from my side too. I came in here today with plans to file for lack of effective assistance because I believe I have a potential conflict of interest. My counsel has explained the circumstances of taking this plea, the sentencing guidelines don't make any sense to me but my attorney says we'll argue that if I were to sign but getting back to what my counsel said to me; he basically is saying the guideline is 168-210 months.
Brian Hayes: Yes, that's correct, which you're not in agreement with.
James Marcus: Yes, exactly. We are NOT agreeing to that‖ You'll get 30%-50% off by cooperating.
EV: Ok, then counsel said that Judge Zagel will give me 120 months for not tying up his time by going to trial. Counsel says that in the eyes of Judge Zagel, I'm freeing up his court schedule and that that is a major thing in my favor at sentencing. Also, counsel said even though you're arguing against the 3 points for acceptance; that Judge Zagel would grant it because I'm cooperating as well‖ Is this true? Any of it?
Brian Hayes: hehehe, well there's a small leap of faith here, is really what it comes down to‖ I know it's not something easy to swallow, but it is really a leap of faith on your part in trusting that everything will pan out that way at sentencing.
EV: A leap of faith?
Brian Hayes: Yes, and frankly I wouldn't be doing this type of thing. I would normally be preparing for trial. But I think you're smart and intelligent. I've listened and watched you respond to the agents in the conference room and I think you would make an

exceptional witness for the government to make its cases.

EV: Ok, can I please have just 48 hours to explain this all to my family?

Brian Hayes: (After short delay) No, I'm sorry.

EV: 24 hours then, just to talk to them so they know from me firsthand what I'm going to do and so there's no confusion? By signing, I am affecting their lives lls well. I owe it to them, so they can hear it from my mouth before I sign. Please Brian. I know you are a fair man. I've asked various attorney's about you, Your reputation is that of a straight shooter and that you 're fair. Please, just 24 hours. Please?

Brian Hayes: (Short delay). No, it's today or never. If you don't sign and take the plea today, I'll just start to prepare to go to trial and you'll get convicted. You'll end up doing much more time, plus the offer to cooperate won't be there anymore and you'll get reindicted on those other new pending cases as well. I believe we have till 11:15AM, but that is it.

EV: Okll I want to talk to counsel in private please, thanks.

Brian Hayes: Alright. Like I said, I think you're intelligent, I watched you respond back in the conference room on February 4th. I think that you're very thoughtful and will make an excellent government witness. The choice is yours. You can take the plea and help out on other cases or you can go to trial and get convictedll It's up to youll
(Hayes/McGlutski leave room)

EV: Jim I'm fucking pissed off, you hear me? I did not come from Kenosha to sign a plea today. I told you that. Why aren't you on my side on this? I'm only asking for a few days so I can talk to Effie she's my fucking wife and deserves to know what's going onll She's going to be in shock in the court room when she sees this. I didn't come here to plea out. I came to recuse you from the case. I think that something is NOT right about all this. Why do they want me to rush to sign? I know there's something wrong. Look at the letter and motion I wrote to the judgell (I hand Jim my prose motions).

Jim Marcus: Listen Ed, You're at the end of your rope. I've tried to telll you in so many ways but this is it. Either you sign in the next hour or you're going to get massacred at trial and do 20 years and more for those pending new charges. Be smart, think of your family. Lets go back in court, sign the plea, give the government the info they need and let me get you home. You got no time left, this is it.

EV:OK, I'm trusting you but I need you to go talk to my wife Effie first and explain the whole point breakdown you keep telling me so she see's and understands that it makes more sense for me to sign then go to trial.

Jim Marcus: Aw, Ed, your wife is crazy, she hates me. Please do me a favor, don't make me talk to her now, OK?

EV: Jim, Please tell her, She needs to know or else I won't sign.

Jim Marcus: Fine, Ok,Ok,. But I'm not going to be taking her calls from now on, she's just a nut case, Ed. I'm sorry with all due respect.

EV: She's my wife, she's not nuts, she just loves me and wants to protect me at all timesll That's perfectly normal Jim.

Jim Marcus: Ok, Listen up, when we go back in court, Judge Zagel is going to ask you a series of questions. One of those will be if anyone promised you anything etc. etc. Just answer NO to him, Ok? Can you do that? And regarding your wife the best I can do is hand write a letter and have the marshalls just have you sign it.

EV: I want you to write her that Hayes is threatening me with more time if I don't sign. Effie and I had agreed over the weekend to not sign and recuse you and go to trial. Shes not going to understand why I am signing and frankly I don't understand what's going on and trusting you blindly. This is totally against common sense to sign for something I didn't do.

Jim Marcus: It doesn't matter here if your innocent and Hayes and I have met a few times without you going over what this is really about. I'm telling you Hayes doesn't care about the truth or your innocence, he's just a vindictive prosecutor and didn't get to be head prosecutor without sending innocent people to jailll

EV: How can I trust you Jim? You have only seen me a few times, you havn't gone over the case with me and I don't have a single page of my discovery. You have said from day one that either I sign or I am fucked big time

Jim Marcus: Because its true, you HAVE to sign or your done Ed. I have talked to Hayes enough to know that your case is very complicated and has nothing to do with the discovery or your innocence. Hayes knows the Swiss guys are the real criminals but it's too late, the Feds already got you to do the time and they are not reopening the V-Tek case to do what's right. You got to sign today and Zagel is not going to take me off your case, so you have to sign. Hayes and Nettols have made it clear to me that this deal and working with them is your only way out. I have to make you sign Ed. But please have Effie stop calling me because she insits on you going to trial and doesn't get how the Capone Feds work.Alright Ed, I'm gona head back to the courtroom.

EV: Alright, see you in a little bit then, please tell Effie what's going because I don't understand what's going on and I'm scared out of my mind.

Jim Marcus: OK, will do.


Signature _____ DATE 8/9/2012


Pursuant to 28 U.S.C. § 1746,

If executed without the United States: "I declare (or certify, verify, or state) under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed on July     2012.

          Signature _____.

               In Propria Persona

James Marcus
Attorney At Law

Date July 30, 2012

Dear Mr. Marcus:

Please within the next 24 hours provide me with the complete details, including contact information of your errors and ommission carrier, as well as a certified copy of your registration with the state BAR and the contact information for the state bar. Since you claim to be registered under the state, like a plumber, then I have the complete right to investigate your credentials and work. I also demand that you provide me with the complete insurance information for the US attorney and for the judge in this case.

Also, you attempted to induce me to enter a plea agreement under threat and duress. I consider that not only a violation of my Constitutional rights to a trial by jury represented by competent counsel (whether you are determined competent will be determined at a hearing on this matter) but also an attempt at coercion by you and/or the US attorney. Should coercion be discovered in this case, you will be both held accountable for your actions, be it civilly, criminally, or both.

Any attempts to circumvent my Constitutional rights will be treated as retaliation. Any attempts by anyone to get even with me for exercising my Constitutional rights will be considered violations under the RICO Act, Deceptive Practices, among others.

Govern yourselves accordingly,

Affidavit attatched.

Pursuant to 28 U.S.C. § 1746,

If executed without the United States: "I declare (or certify, verify, or state) under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed on July 30, 2012.

Signature _____".

In Propria Persona

*Appendix B*

**Affidavit of Fact**

**On August 13, 2012 I prepared this affidavit of fact.**
**I certify I am above the age of the majority, that I have personal**
**knowledge of these facts, that I am not insane and that I am prepared**
**to testify to these facts.**

1. My name is Aphrodite Partalis.
2. I am the fiancee and common law wife of Eduardo Velazquez.
3. Eduardo and I lived together in Lincolnwood, Illinois with our seven year old daughter Evangelina (at the time she was 5 years old) along with our dog Apollo, up until June 02, 2010 when Eduard was taken into custody by government agents that broke down the door and pointed guns at us.
4. I was one month pregnant with our second child when Eduardo was taken from our home.
5. Our daughter Christiana was born on January 30, 2011 while Eduardo was still held in custody and is now almost 19 months old.
6. I am in direct communication on a daily basis with Eduardo via telephone and or email since Eduardo was relocated to the MCC Chicago on approximately July of 2011.
7. I visit Eduardo on a weekly basis in person at the MCC Chicago where he is still currently detained and sometimes twice a week when I am allowed and able to do so.
8. I visit Eduardo at the MCC Chicago regularly with both our children or one of our children at a time, depending on whether they are well and able to. Evangelina attends elementary school and some of the time conflicts.
9. I visited Eduardo almost every week on a weekly basis while he was held one hour's drive away at KCDC in Kenosha, WI. along with my daughter Evangelina until the very last of my 3rd pregnancy term.
10. My parents and Eduardo's sister Bianca would sometimes come with me, more frequently toward the second and third terms of my pregnancy due to the long distance and risk of my going into labor.

11.     We saw Eduardo through a video monitor and when we saw him through a glass partition, with even greater joy at KCDC.

12.     I basically had daily telephone communication with Eduardo and written correspondence and mail correspondence with restrictions.

13.     I was referred to attorney James I. Marcus for Eduardo's legal defense counsel after seeking an attorney to replace the public defender who was currently mishandling the case and not communicating.

14.     I met with Mr. Marcus in his office at 100 West Monroe St. in Chicago, suite 309 in September of 2010.

15.     James Marcus seemed eager to take the case and appeared ready to fight for Eduardo's innocence.

16.     James I. Marcus told me he was one of the Super attorneys.

17.     I very clearly expressed to James Marcus that the wishes of both myself and Eduardo were that we both be made fully aware of all the details of the case, including but not limited to all court motions and appearances.

18.     I explained to Marcus the problems we had with both previous attorneys not communicating and not complying with our wishes and the detrimental effects this lack of compliance caused.

19.     James Marcus agreed to comply with our wishes and keep me fully informed.

20.     James Marcus told me he would be able to file an appearance as defense attorney for Eduardo in a week or two. I urged him to file his appearance as soon as possible.

21.     James Marcus informed me that he would not be able to file actively work on the case right away because he had another very high profile case out of town that he was handling and that he would not be able to free up until November.

22.     In September I presented the law firm of Dziedziak and Marcus P.C. with four checks totaling $50,000.00 that were deposited.

23.     Upon my request, I was issued a notarized letter confirming receipt of payment yet only after the checks had cleared.

24.     I have in my possession a receipt, signed by Marcus and notarized in his office by his staff, confirming the total payment of $50,000.00 for the legal defense of Eduardo Velazquez.

25.     I spoke with Marcus somewhat regularly on the phone at that time when he was still taking my calls.

26.     After a status hearing in November of 2010, Marcus started to say that Eduardo needs to talk to the government so that could hear Eduardo's version of what happened.

27.     He told me and Eduardo's sister Bianca Ganvik that he wanted to hire a forensic accountant.

28.     Eduardo was upset about the fact that Marcus knew so little about the facts of the case and the mistakes he made during their conversations.

29.     Attorney Marcus had not kept his promises to interview witnesses, to do a thorough investigation, to hire a forensic accountant and he broke many other promises including but not limited to going over motions, the counts and discovery on the case.

30.     Attorney Marcus was trying to convince Eduardo to cooperate with the government and take a plea without having any knowledge about the case.

31.     On one phone call I told attorney Marcus that Eduardo did not trust him because he caught him in lies.

32.     Marcus told me that they were okay now, which also was not true.

33.     One day after speaking with Eduardo, whom again was disgusted with Marcus, I called Marcus to ask him what he was trying to do.

34.     He said that he did not want to talk to me about the case because it was very dangerous for Eduardo.

35.     He also told me that I should talk to Eduardo myself if I wanted to find out.

36.     I told him that Eduardo could not tell me the specific details over the phone and that our visits were also monitored and/or recorded.

37.     Eduardo told me to call Marcus.

38.     I reminded him that when I retained him our agreement was that I was to be informed about everything.  That was my decision and Eduardo's.

39.     He said he had to hear that from Eduardo.

40.     I was adamant.  I told him he already had that confirmation from Eduardo and to ask him again the next time he went to see him if he needed to hear it again.

41.     He told me okay.  He would tell me but that I should not tell anyone about what he was to disclose because that would put Eduardo in grave danger.

42.     That what Eduardo had was good, really good information.

43.     That Eduardo should cooperate with the government.

44.     Another time attorney Marcus and I spoke on the phone he told me, "I spoke with the government all day.. Good news"

45.     That the judge in court mentioned some things.

46.     That they are arguing against three points but he's getting them. He added very likely.

47.     He proceeded to break down the time served for me.

48.     That the judge would be so happy that he's clearing up his court schedule and that Eduardo is not wasting any more of the court's time.

49.     That from the recommended guidelines of as many as 168 months, they always take the low end. So that would take it to 120 months.

50.     That he could get anywhere from 30-50% off for cooperating. "Don't count on 50%.  Count on 40%", were his exact words.

51.     That out of 120 months, 40% off would bring the time to 72 months.

52.     That out of those months he would serve 85% of the time, which is good conduct... so that would bring it down to say 62 months.

53.     That he could also get one year off for alcohol rehabilitation counseling.

54.     That 6 months would be spent in a halfway house.

55.     That for one 1 ½ - 2 ½ years he would be here at the MCC Chicago cooperating.

56.     That he will get credit for time already served.

57.     That he should be out in a a year to a year and  half at that point.

58.     That if he does not accept the plea they will go after him and indict him on other cases.

59.     That if we go to trial we will lose because we are not prepared.

60.     That 97% of federal cases lose.

61.     When I asked him if this agreement would be in writing he told me he is asking us to take a leap of faith.

62.     That this is how things worked.

63.     When I asked why they don't go after the real criminals... Marcus replied that the statute of limitations is up and they cannot go after the bad guys that set Eduardo up.

64.     On a visit before a hearing Eduardo told myself and his sister Bianca that he wanted us to find out how much money was left.

65.     That Marcus could not have used up all the money because he did not do anything.

66.     That he did not trust Marcus and all Marcus did was try to convince Eduardo to plea out and cooperate.

67.     That we should try to get a hold of Dan Webb.

68.     That we should fire Marcus and hire this other attorney.

69.     When I spoke with Marcus he tried to tell me that he had reviewed a lot of the documents and he did put in quite a few hours.

70.     I did not believe him. He knew nothing about the case and did not make any motions or attempts to investigate the case, the witnesses, nothing.

71.     When I asked him how much he was charging me, he then told me between 500 and 700 per hour. I was in shock. I never agreed to that.

72.     I told him we want to fire him.

73.     He told me the judge would not allow it.

74.     That who were we going to get? That we had to trust him.

75.     That he was one of the super attorneys.

76.     That Dan Webb would charge a ridiculous amount.

77.     I noticed that was when he was putting more pressure on Eduardo to cooperate and plea out so that he could keep the money we had given him. The money he did not earn.

78.     Eduardo asked me to call another attorney.

79.     We sought other counsel and I was trying to raise the funds.

80.     Eduardo wrote a letter to the judge and a prose motion that he held in his hands with the complete intention of presenting them to the judge on his next court date of February 23, 2011 asking to recuse the attorney Marcus and explaining the reasons.

81.     **There was a definite lack of defense on counsels part. Ineffective counseling, a direct 6ᵗʰ amendment right violation and more.**

82.     **Eduardo had asked attorney to go over and explain the counts and the discovery but attorney did not do so.**

83.     **There was a huge conflict of interest and a break of trust to put it mildly.**

84.     **The attorney Marcus broke promises.  He did not conduct a thorough investigation.**

85.     **He did not go over the affects of a jury trial.**

86.     **I called attorney Marcus and made the grave mistake of informing Marcus he was fired, unaware that I had prepared him to put it in high gear and put the pressure on Eduardo yet again, before he could follow through with his best intention of requesting new counsel.**

87.     **Prosecutor Hayes, Marcus tag teamed and lied to, coerced and threatened Eduardo into taking the plea the next day in court.**

88.     **Marcus handed me a letter that Marcus had hand written and made Eduardo sign.**

89.     I was not successful in securing funds for Eduardo so that an attorney could file an appearance and be present.

90.     I sat in shock and utter disbelief, wanting to scream out in the court room while observing the farse.

91.     All the injustice and underhanded dealings of prosecutors, federal agents and our own attorneys at the expense of Eduardo, myself, our two children  as well as our parents, siblings, friends.

8-13-2012

Certified as true and correct.

..................................................

Aphrodite Partalis

"OFFICIAL SEAL"
NICOLE BERGES
NOTARY PUBLIC, STATE OF ILLINOIS
MY COMMISSION EXPIRES SEPTEMBER 23, 2014

# Aphrodite Partalis

**From:**  VELAZQUEZ EDUARDO (40433424)

**Sent Date:** Saturday, August 11, 2012 1:01 AM

**To:** afroditi.rafael@gmail.com

**Subject:** Inmate Request to Staff for all attorney emails

Hi everyone, here is my request to MCC staff requesting all my emails sent to Marcus during Dec 2011 and Jan 2012.

Work Assignment: Old sent email retrieval
Area: Email retrieval
Register No: 40433424
Unit: CCC-E-A
Date: 8/10/2012  1:54pm
Department: Trust Fund Services
Personnel: Ms Davis
Message:

Ms Davis,

I am hereby officially requesting any and all emails I previously sent to my attorney James Marcus at his email address jim@dzmlaw.com during the months of December 2011 and January 2012. These said emails are needed to properly initiate my defense in court and the failure or promptliness of fulfilling said request can and may cause unseen harm and detriment to the outcome of said defense. To the best of my memory, I believe it to be less than five (5) emails sent to him, but I am not entirely certain. These emails are needed as soon as possible before my scheduled court appearance of Tuesday August 21st, 2012, preferably by Tuesday August 14th, 2012 so that I may have a full week to properly prepare court documents in a timely fashion so as to not bring dishonor to the court by filing too close to my scheduled appearance. I fully appreciate the fact your work schedule may perhaps impose on the quickness of said request. The notice that states any request may take up to three (3) weeks is also duly noted.

I kindly await your rapid and courteous reply.

sincerely,
Eduardo Velazquez

*"This is an original from my email"*

Eginnia Partalis
Aphrodite Partalis

8-13-2012

"OFFICIAL SEAL"
NICOLE BERGES
NOTARY PUBLIC, STATE OF ILLINOIS
MY COMMISSION EXPIRES SEPTEMBER 22, 2014

Affidavit of Fact

On this day I prepared this affidavit of fact.

I certify I am above the age of the majority, that I have personal knowledge of these facts, and that I am not insane, and that I am prepared to testify to these facts.

Facts:

1. My name is Zully Velazquez, sister of Eduardo R. Velazquez.
2. I respectfully present this affidavit as it relates to my brother's defense attorney,
3. James I. Marcus's ineffective performance as counsel.
4. And recent request to withdraw from this case.
5. Mr. James I. Marcus has misrepresented the truth relating to his attorney/client relationship stating irreconcilable differences and the defendant's refusal to speak and /or meet with counsel.
6. I found Mr. Marcus's motion to withdraw on PACER and immediately informed my brother and family.
7. On June 26, 2012 4:01PM I left a voicemail for Blanca Lara, Honorable Judge Zagel's clerk reporter.
8. I asked for guidance as to whom I could contact to file a complaint because this was a disgrace.
9. I realized she may not be the appropriate party to reach out to and never heard back from Ms. Lara.
10. The defendant's family can no longer sit back in fear and intimidation watching further injustice takes place.
11. Given the obligation of counsel to avoid conflicts of interest.
12. Is because counsel actively represented conflicting interests in this case which adversely affected counsel's performance.
13. Actions so serious resulting in depriving the defendant of a fair trial.
14. As the defendant's family makes inquiries and facts surrounding this case are brought to light.
15. We assume this maybe why Mr. James I. Marcus is stating irrevocable differences.
16. With all due respect, we ask Honorable Judge Zagel to take account of the lack of vigorous advocacy of the defendant's cause.
17. And the variety of circumstances involving conflicting interests and ineffective performance.
18. We ask Honorable Judge Zagel to make a fair assessment of defense attorney's performance by reconstructing the circumstances of counsel's challenged conduct.
19. And to evaluate the conduct from counsel's perspective at the time, and that this was not considered sound trial strategy.
20. The breakdown in attorney-client communications, alluded to by Mr. James I. Marcus,
21. Actually was on the side of the attorney.
22. I present emails I was copied on supporting the ongoing problem of counsel's lack of communication with his client.
23. The defendant even asked that family members attempt to contact the defense counsel.
24. An attorney shall promptly inform the client, consult with the client, and comply with reasonable requests for information.

25. Reasonable communication between the attorney and the client is necessary for the client effectively to participate in the representation.
26. An attorney shall act with reasonable diligence and promptness in representing a client
27. An attorney shall not counsel a client to engage, or assist a client, in conduct that the attorney knows is criminal or fraudulent.
28. Representation of a criminal defendant entails certain basic duties.
29. Counsel's function is to assist the defendant,
30. And hence counsel owes the client a duty of loyalty, a duty to avoid conflicts of interest.
31. From counsel's function as assistant to the defendant derive the overarching duty to advocate the defendant's cause.
32. And the more particular duties to consult with the defendant on important decisions
33. And to keep the defendant informed of important developments in the course of the prosecution.
34. Counsel also has a duty to bring to bear such skill and knowledge.
35. Counsel has a right and a duty to present a cause fully and properly and that a defendant has a right to a fair and impartial trial hearing.
36. These basic duties do not exhaustively define the obligations of counsel.
37. Prevailing norms of practice as reflected in American Bar Association standards and the like, e.g., ABA Standards for Criminal Justice 4- 1.1 to 4-8.6 (2d ed. 1980) ("The Defense Function").
38. Mr. James I. Marcus has not adhered to any of the above
39. And has not acted appropriately or in accordance to the Illinois Rules of Professional Conduct.
40. Defense counsel, James I. Marcus failed to maintain reasonable communication with defendant nor accept any communication from defendant's family
41. Defense counsel, James I. Marcus did not properly inform defendant of notices or of critically important hearing dates.
42. The defendant's family relayed these events to defendant when made available on PACER
43. An additional expense incurred by the family.
44. Defense counsel, James I. Marcus did not evaluate evidence nor analyze the factual and legal elements of the case.
45. Defense counsel, James I. Marcus did not go over discovery with defendant.
46. Defense counsel, James I. Marcus did not review all the charges with defendant.
47. Defense counsel, James I. Marcus did not investigate or interview any witnesses as proposed.
48. Defense counsel failed to produce defendant's signed proffer stating he could not find it
49. Mr. James I. Marcus's ineffective representation was in direct result of neglecting the guidelines and rules which interfered constitutionally with the effective assistance guarantee of the Six Amendment to ensure that criminal defendants receive a fair trial.
50. By doing so it restricted the wide latitude counsel must have in making legitimate and tactical decisions.
51. Thus Mr. James I. Marcus did not competently represent his client.
52. As he lacked the required thoroughness and preparation reasonably necessary for the representation.
53. All these facts destroyed the defendant's legal position, not only caused damage but violated the defendant's rights.
54. Causing needless mental and physical anxiety and once again undermined confidence in the legal system and in counsel's trustworthiness.

55. After finding Public Defender, Imani Chiphe unavailable and in-cooperative, it was with great difficulty, the defendant's family raised funds to hire James I. Marcus in September 2010.

56. Total fee paid to Mr. James I. Marcus for the defense of Eduardo R. Velazquez was $50,000.00.

57. I personally funded $40,000.00 and my sister Bianca Ganvik funded $10,000.00.

58. My brother, Eduardo R Velazquez, currently held at MCC, And prior held at Kenosha County Detention Center.

59. He has made more than reasonable efforts to contact his attorney by means available to him (via email and by phone).

60. I respectfully request that Honorable Judge Zagel subpoena emails, phone records, call recordings, and Security Sign in records at both holding facilities

61. To demonstrate to this court the chronological history of all outbound/inbound calls between client and attorney.

62. And Security logs will also show this court how many times Mr. James I. Marcus has actually met with his client since September 2010.

63. With Honorable Judge Zagel's assistance, I would anticipate that Mr. Marcus will acknowledge and answer this affidavit promptly.

64. It would also be an opportune time to request that Mr. James I. Marcus explain to Judge Zagel and this court why he has not responded to the various requests his client made.

65. Requests for files, case information, accounting, signed proffer etc.

66. Requests that have were completely ignored and a couple for which Defense counsel gave sporadic and unacceptable excuses.

67. Stating that it would take significant amount of time to prepare.

68. Or that the case files are extremely large and requires much time to review.

69. Counsel's representation fell below an objective standard of reasonableness.

70. And counsel has not acted as a reasonably competent attorney.

71. Inadequate legal advice was given.

72. Not within the range of competence demanded of attorneys in criminal cases.

73. Mr. James I. Marcus has not been of any assistance to his client.

74. Events that have taken place unknown to all, is a disgrace and disheartening for citizens of this country.

75. If one is to speak freely as backed by our civil rights,

76. It should be known to this court that conduct and actions of defendant's counsel, prosecution, and agents involved in this case were unlawful.

77. Chronological review of events as known.

78. Honorable Judge Zagel granted motion to substitute Public Defender with attorney James I. Marcus on October 12, 2010.

79. On November 2, 2010, Mr. James I. Marcus motioned to continue trial date

80. Stating he had received 7 banker's boxes of discovery, case files, and exhibits for which it would be unreasonable to assume that he could be adequately prepared for trial in January 2011.

81. Mr. James I. Marcus requested continue trial date to April 2011

82. Stating this would allow him adequate time for preparation, but instead,

83. Defense counsel's actions in February 2011 were nothing more than inappropriate representation of his client.

84. Defendant requested to see and speak with his family and was denied.

85. It should be known that defendant was threatened and coerced to cooperate and sign a plea agreement, on not one but two occasions.

86. February 4, 2010, was the 1st occurrence while shackled under custody in Prosecutor Brian Hayes' conference room at Dirksen Federal Building, parties present: James I.

Marcus (Attorney), Brian Hayes (Prosecutor), Brian Netols (Prosecutor), John Diwik (FBI), John McGlutski (FBI), and Forensic Accountant (FBI name unknown)

87. February 23, 2011 was the 2nd occurrence while in the Dirksen Federal Building's inmate holding cell, Attorney James I. Marcus and Prosecutor Brian Hayes again threatened Eduardo R. Velazquez to sign and cooperate.

88. It is evident that Defense counsel's ineffective performance had a direct result in counsel's range of making legitimate decisions regarding how best to represent his client.

89. And we assume that the defense counsel took the easy way out.

90. As it was made well known to the defendant that the case was old and everyone was anxious to close it, among other similar commentary.

91. We respectfully request that Honorable Judge Zagel order Mr. James I. Marcus refund the full $50,000.00 fee he received for lack of reasonable performance and lack of professional practice.

92. I would like the court to know that I am preparing to file a complaint to the Illinois Bar Association as well as the Attorney Registration and Disciplinary Commission of the Supreme Court of Illinois for ineffective assistance by Mr. James I. Marcus and the collusion that has taken place on this case.

93. We are aware that substandard practice by attorneys is a known problem for which I trust will receive more attention as more people come forward to voice their concerns so that the disciplinary regulations will be revised to overcome these shortcomings and enforce professional practice standards

Certified as true and correct.

ZULLY A. VELAZQUEZ

Notary Public

CRYSTAL M. PANDORF
Notary Public - State of Florida
My Comm. Expires Sep 1, 2012
Commission # DD 817546

On this day, the ___8___ of _August 2012_, came before me _Zully A Velazquez_ personally known to me, and certified that the facts stated above are true and correct under the penalty of perjury.

NOTARY PUBLIC FOR THE STATE OF FLORIDA

# Zully Velazquez

| | |
|---|---|
| **From:** | VELAZQUEZ EDUARDO (40433424) |
| **Sent Date:** | Friday, December 16, 2011 7:48 AM |
| **To:** | luvsaltlife@gmail.com |
| **Subject:** | RE: Re: Status update re: detailed accounting requ |

ok
-----Velazquez, Zully on 12/16/2011 1:33 AM wrote:

>

Ok will tlk to ef tmrw.

EDUARDO VELAZQUEZ on 12/15/2011 9:17:17 PM wrote
hi all,

I called my attorney Jim Marcus everyday this week and he is not picking up my calls. I think he knows it's me
calling and is deliberately deciding to just hang up on me. I have not asked him yet for the detailed accounting
because he won't answer my call. So I am not sure how to reach him. Can you guys do a conference call with
him and tell him that I am trying now for a whole week and that I want the detailed accounting?

xoxoxo
e

# Zully Velazquez

**From:**        VELAZQUEZ EDUARDO R (40433424)

**Sent Date:**   Wednesday, February 29, 2012 2:02 PM

**To:**          luvsaltlife@gmail.com

**Subject:**     Feb 29, 2012 Case update - Eduardo Velazquez

Jim,

I would like to have an update as to where things stand with the case as I have not heard from you in a while. I have tried on numerous occasions to call you but you never pick up. As you may recall, I previously asked for copy of the signed proffer and the full detailed accounting for my case when you visited me here at MCC on Dec 18th 2011 and in Jan 2012. I realize and fully appreciate what you said referencing the fact that the significant amount of legal documents pertaining to my case was the main detriment for you to gain access to the detailed accounting and the copy of the signed proffer. Albeit, for the record, it's now approaching three months since I initially requested these two items. So, I now am once again, for the record, requesting the signed proffer and full detailed accounting. I trust you will comply in a rapid and coureous manner.

sincerely,
Ed Velazquez

2/29/2012

# Zully Velazquez

| | |
|---|---|
| **From:** | VELAZQUEZ EDUARDO R (40433424) |
| **Sent Date:** | Friday, April 06, 2012 1:03 PM |
| **To:** | luvsaltlife@gmail.com |
| **Subject:** | RE: Re: Feb 29, 2012 Case update - Eduardo Velazqu |

Hey guys,
here is the official response back from my attorney Jim.
xoxoxo
e
-----Marcus, Jim on 3/12/2012 2:18 PM wrote:

>

Hi Ed,

My apologies for not getting back to you sooner, but I have been out of town. I will visit you shortly, as we need to discuss aspects of your case.

Jim

EDUARDO R VELAZQUEZ on 2/29/2012 2:02:22 PM wrote
Jim,

I would like to have an update as to where things stand with the case as I have not heard from you in a while. I have tried on numerous occasions to call you but you never pick up. As you may recall, I previously asked for copy of the signed proffer and the full detailed accounting for my case when you visited me here at MCC on Dec 18th 2011 and in Jan 2012. I realize and fully appreciate what you said referencing the fact that the significant amount of legal documents pertaining to my case was the main detriment for you to gain access to the detailed accounting and the copy of the signed proffer. Albeit, for the record, it's now approaching three months since I initially requested these two items. So, I now am once again, for the record, requesting the signed proffer and full detailed accounting. I trust you will comply in a rapid and coureous manner.

sincerely,
Ed Velazquez

# Zully Velazquez

**From:**       VELAZQUEZ EDUARDO R (40433424)

**Sent Date:**  Monday, May 07, 2012 4:33 PM

**To:**         luvsaltlife@gmail.com

**Subject:**    May 7, 2012 Case Update - Eduardo Velazquez

Jim,

I would like to request any and all discovery, documents, emails, audio or visual recordings, witness statements, as well as any and all evidence the US Prosecutor has ever produced. Please arrange to have it sent to me here at the Metropolitan Correctional Center within fourteen days. I would, in addition, like to get the copy of the full detailed accounting you promised me back on Dec 18, 2011 as well.

I kindly await your courteous and rapid response.

sincerely ,
Eduardo Velazquez

# Zully Velazquez

| | |
|---|---|
| **From:** | VELAZQUEZ EDUARDO R (40433424) |
| **Sent Date:** | Tuesday, May 08, 2012 1:49 PM |
| **To:** | luvsaltlife@gmail.com |
| **Subject:** | RE: Re: May 7, 2012 Case Update - Eduardo Velazque |

Tekanis agapimou,

here is the response from Jim Marcus.

xoxo
E
-----Marcus, Jim on 5/8/2012 12:00 PM wrote:

>

Thank you for your email. The discovery in this case is extensive and is contained in approximately 5 boxes. I would like to speak with you. Let me know if you are willing to do so. I will be traveling the next week to 10 days. Consequently it will be difficult to get over and see you until sometime next week. In any event, please let me know if you are willing to further discuss the case with me.

I will assemble the requested materials, but it will take some time as this case is extensive as is the government's production and as well as the time expended on my account.

Thanks,

Jim

EDUARDO R VELAZQUEZ on 5/7/2012 4:33:32 PM wrote
Jim,

I would like to request any and all discovery, documents, emails, audio or visual recordings, witness statements, as well as any and all evidence the US Prosecutor has ever produced. Please arrange to have it sent to me here at the Metropolitan Correctional Center within fourteen days. I would, in addition, like to get the copy of the full detailed accounting you promised me back on Dec 18, 2011 as well.

I kindly await your courteous and rapid response.

sincerely ,
Eduardo Velazquez

LAW OFFICES

# DZIEDZIAK & MARCUS, P.C.

100 WEST MONROE STREET
SUITE 309
CHICAGO, ILLINOIS 60603

TELEPHONE (312) 443-5600
FAX (312) 443-5601
www.dzmlaw.com

JOHN F. DZIEDZIAK
JAMES I. MARCUS

September 20, 2010

## RE:  Edwardo Velazquez

## R E C E I P T

I, Annie Sepulveda Lopez, paralegal with Dziedziak &
Marcus, P.C. hereby acknowledge the receipt of a check in
the amount of $40,000.00 from Zully Velazquez as a
retainer for the representation of Edwardo Velazquez on
today's date, September 20, 2010.

```
"OFFICIAL SEAL"
DEBBIE J. MARIS
Notary Public, State of Illinois
My Commission Expires 02/28/14
```

*Debbie J. Maris*

*September 20, 2010*

*Annie Sepulveda Lopez
for
James I Marcus*

**THIS IS A MULTICOLOR SECURITY DOCUMENT. CHECK BACKGROUND AREA CHANGES COLOR GRADUALLY FROM TOP TO BOTTOM.**

# Fidelity
INVESTMENTS®

### Fidelity Investments Institutional Operations Co.

VERIZON SAVINGS PLAN

Check Number
0024445382B

Account Number
90276

Date of Check
Sep 03, 2010

62-38
311

$*****40,000 | 00

Void After 180 Days

Pay to the Order of:
ZULLY A. VELAZQUEZ
2339 Hawthorne Dr
Clearwater, FL 33763

Deutsche Bank Trust Company Delaware

**Authorized Signature**

⑈0244445382⑈ ⑆031100380⑆ 005903⑈⑈

THE ORIGINAL DOCUMENT HAS A REFLECTIVE WATERMARK ON THE BACK.   HOLD AT AN ANGLE TO VIEW WHEN CHECKING THE ENDORSEMENT.

---

THIS DOCUMENT HAS A TRUE WATERMARK. THE FRONT OF THE DOCUMENT HAS A MICRO-PRINT SIGNATURE LINE. ABSENCE OF THESE FEATURES WILL INDICATE A COPY.

# B™

70-2858
719

131269

September 17, 2010

REMITTER

The purchase of an indemnity bond may be required before this check
can be replaced or refunded in the event it is lost, misplaced or stolen.

Pay to the
Order of _____                                    $  8,000.00

BRIDGEVIEW
BANK GROUP  ⑈ 8,000dols 00cts                                  Dollars

VOID OVER $8,000.00

•••  ● ● ● BRIDGEVIEW BANK GROUP
Bridgeview, Illinois 60455
www.bridgeviewbank.com

Two signatures required over $100,000.00

⑈0131269⑈ ⑆071923569⑆ 900107401⑈